# EUREKA HILL MINING COMPANY, APPELLANT, *v.* EUREKA CITY, RESPONDENT.

JUDGMENT — OF COURTS OF GENERAL JURISDICTION — PRESUMED VALID—BURDEN ON ONE WHO ATTACKS—PROOF REQUIRED—SEC. 4, ART. 13, CONST. — SECS. 2504, 2566, 2568 AND 2569, R. S. 1898 — DUTY OF COUNTY ASSESSORS — ASSESSMENT OF CITY PROPERTY —LEVY OF CITY TAX — SEC. 2688, R. S. 1898 — ACTION TO RECOVER TAX—WHEN WILL NOT LIE—NET PROCEEDS OF MINES— PERSONALTY---WHEN TAXABLE.

*Judgment — Of Court of General Jurisdiction — Presumed Valid — Burden on one who Attacks—Proof Required.*

The intendments of the law, are, that the judgments of courts of general jurisdiction are valid, and that he who attacks them must conclusively show their invalidity.

*Sec. 4 Art. 13 Const.—Secs. 2504, 2566, 2567, 2568 and 2569 R. S. 1898—Duty of County Assessors—Assessment of City Property— Levy of City Tax—Sec. 2688 R. S. 1898—Action to Recover Tax— When will not Lie.*

Under the authority of Sec. 4 Art. 13, Const., and Secs. 2504, 2566, 2567, 2568 and 2569 R. S. 1898, it is the duty of the county assessor of each county in which an incorporated city is situated to assess, in accordance with the provisions of Sec. 2688 R. S. 1898, the taxable property in such city, and deliver a copy of that part of his assessment roll containing the assessment of such city property, to the city auditor; thereafter such assessment roll may be used by the city authorities, as provided in said section in levying taxes for general municipal purposes; and when the acts of the assessor are in due form and the tax regularly levied by the city autorities, and there is nothing on the face of the official proceedings to show that any officer acted illegally or superseded his authority, the acts of the assessor and city authorities are presumed to be valid until the contrary is shown.

*Net Proceeds of Mines—Personalty—Where Taxable.*

> The net proceeds of a mine are taxable at the place where the
> ores are taken to the surface through the main workings, and
> being personal property should be taxed as other personalty.

(Decided Dec. 6, 1900.)

Appeal from Fifth District Court Juab County. Hon.
E. V. Higgins, *Judge.*

Action in which plaintiff seeks to recover a certain sum
alleged to have been levied and collected by defendant as
a tax on the net annual proceeds of defendant company's
mine and paid by such company under protest. From a
judgment for defendant plaintiff appealed. *Affirmed.*

*Messrs. Bennett, Harkness, Howat, Sutherland &
Van Cott,* for appellant.

The provision of the statute for the taxation of the net
proceeds was simply the method adopted by the legislature
to fix the taxable value of the mining interest each year
upon a more equitable basis than the speculative value of
the mine itself; and the place where the tax may be im-
posed is to be determined by the locality from which the
ores are extracted.

The appellant insists that the trial court erred in finding
that the appellant was liable to the city for taxes upon the
net proceeds of ores extracted from its mining ground out-
side of the limits of the city.

In Gilchrist's Appeal, 109 Pa. St. 600, the supreme
court of Pennsylvania held that the rule that a municipal
corporation could tax only real estate lying within its cor-
porate limits, applied to valuable deposits beneath the
surface as well as the surface ground.

If the tax in question, however, is to be tested by the
rules applicable to the taxation of personal property, the

decision of the court is equally open to objection. The ore, immediately upon its severance in the various stopes of the mine, became personal property. *Lykens Valley Coal Co.* v. *Dock*, 62 Pa. St. 232.

*N. A. Robertson, Esq.*, for respondent.

In the case of *Virginia City* v. *Chollar-Potosi M. Co.*, reported in 2 Nevada, 91, the court say:

"All property within a city, except that which is *in transitu* is liable to one annual taxation  *  *  *  if it were owned or held in the city at any time during the year after the law was passed, it was subject to taxation. The duty to pay a tax on the property arose whilst the property was in the city."

Further on, at page 92, the Court say:

"It is evident when ore is taken out of the mine it is not worth what it will yield; for if ore be taken out which, by working process it will only yield twenty dollars per ton, and it costs twenty dollars to haul it to a mill, and have it worked, it is really worth nothing; hence it was very properly provided that in assessing ores, twenty dollars per ton should be taken from the actual yield of such ores, that being generally considered about the cost, etc., of hauling ores to the mills and working them, at the time that law was passed."

It will thus be seen that the thing taxed having been traced into the city limits, the city had the right to collect its taxes upon it.

BASKIN, J.

This is an action in which the Eureka Hill Mining Company, a corporation, sought to recover from Eureka City, a municipal corporation, the sum of $615.17, levied

22 Utah—29.

and collected by said city as a tax on the net annual proceeds of said company's mine, and paid by said company under protest.

It appears from an agreed statement made by the parties and from the findings of fact by the trial court, that the mining company during the years 1896 and 1897 owned five mining claims situated in the county of Juab, Utah, and worked the same as one mine, known as the Eureka Hill mine; that about 67 4-10 per cent. of the area of said mining claims lies within, and about 32 6-10 per cent. thereof lies outside of the boundaries of said city; that the main shaft, the compressor, hoisting works and ore veins of said mine are situated within the limits of said city; that a portion of the mill used by said company in operating said mine is within, and a part outside, of the city limits; that in that portion of the mill within the city the office of the mining company in said city is situated, but that the main office of said company is in Salt Lake City, and that city is designated in the Articles of Incorporation of said company as its principal place of business; that all of the ore extracted from said mine was raised through the main shaft and mixed together at the hoisting works within the city of Eureka and there sorted into two grades, milling and shipping ore; that the shipping ores were from thence shipped to markets outside of the city and sold, and the milling ores were shipped to the company's mill and there reduced to a marketable article and thence shipped out of the city and sold; that of the ore so extracted and sold for the year ending June 1st, 1897, about 45 percent., in volume, came from ground lying within the city, and about 55 per cent. from ground lying without the city; that in value about 70 per cent. of the ore was extracted from ground lying within, and about 30 per cent. from ground lying without

the city limits; that the mining company kept no separate account of the net proceeds derived from ore extracted from the mine within the city or of the net proceeds of ore extracted from the mine outside of the city, but kept one account only of the net proceeds derived from the whole of the ore extracted, shipped and sold; that the mining company made and returned to the assessor of Juab county, a statement showing the net proceeds of its mine for the year ending June 1st, 1897, to be $184,477; that said assessor in due time, during the year 1897, delivered to the city recorder of said city, a copy of that portion of the county assessment roll, containing the assessment of the property in said city, including the net proceeds of said company's mine so returned by the assessor; that the city regularly levied a tax of five mills on the dollar on the amount of the proceeds of the company's mine set out in the copy of that part of the county assessment roll so delivered by said assessor to the city auditor; that the tax levied on said net proceeds amounted to $922.38, and of this sum the company paid to the city $307.45 but denied the right of the city to collect the balance $614.92; that afterwards the city advertised the company's property for sale to satisfy said balance; and the company to avoid a seizure and sale of its property paid the same under protest. The city did not request, and the company did not make to the city any return of either the amount of ore extracted within the city, or the net proceeds thereof, or any estimate of the same. Said levy was based, solely, on the net proceeds of the company's mine as returned to the city auditor by the county assessor.

In addition to the foregoing facts the trial court found the following facts:

"That there is no method of ascertaining what proportion of such shipping ores, and such milling ores, originally

came from within or without the city limits, and that all ores extracted from the mine were mixed at the said hoisting works after raising from the mine. That the books of plaintiff could have been so kept that the amount and proceeds of ores extracted from within the city limits would be capable of definite ascertainment, but were not so kept; nor was there any attempt on the part of the plaintiff to separate the ores taken from within and without the city limits, or the net proceeds derived therefrom."

As a conclusion of law, the trial court found "That the net proceeds of plaintiff's mine, within and without the city of Eureka, are taxable at the place where they are taken to the surface through the main shaft of the plaintiff, which is within the limits of defendant city," and dismissed plaintiff's complaint and rendered a judgment for costs against the plaintiff.

Numerous assignments of error were made by the appellant, but the only one relied upon by its counsel, in their brief, is, that the evidence is insufficient to support the judgment.

The contention of appellant on this point, is, that the net annual proceeds of the mine, derived from ores extracted therefrom, outside of the boundaries of the city, were not subject to taxation by the city, and that the conclusion of law found from the facts, by the court below, is erroneous.

Sec. 4, Art. 13, Const., provides that "The annual proceeds of all mines and mining claims, shall be taxed as provided by law."

The Revenue Act of 1896, in pursuance of that provision of the constitution, provides that: "The net annual proceeds of all mines and mining claims shall be taxed as other property (Sec. 2504 R. S.) and that every owner of mines and mining claims engaged in working the same,

must, between the first and tenth of April, in each year, make a verified statement showing the net annual proceeds thereof and *deliver the same to the assessor of the county in which the mine or mines are situated.* Secs. 2566, 2567, 2568 and 2569 R. S. 1898.

From the requirement that such statement should be delivered to the assessor of the county in which the mine or mines are located, in connection with Sec. 2688 of the Rev. Stat., which provides that "On or before the first Monday of June in each year the county assessor of each county in which there is situated any incorporated city or town, shall deliver to the clerk or recorder of each city and to the clerk or president of the board of trustees of each town, a statement showing the aggregate valuation of all the taxable property in such city or town; and shall deliver to the recorder of each city of the third class and to the clerk of each town a copy of that part of the assessment roll containing the assessment of property in each such city or town, respectively, which shall be used as the basis for general municipal taxes therein until the next county assessment is made," it is evident that the legislature intended that the counties, cities and towns within the limits of which mines are situated should respectively levy, collect and appropriate to their respective use, the tax on the net proceeds authorized by the. Revenue Act. This being so the jurisdictions in which such proceeds may be taxed are not the places where the ores are brought to the surface, for in some instances the ores may be brought to the surface through tunnels and shafts at points entirely outside of the jurisdiction, in which are situated all of the surface ground of mines, and the apexes of all the veins or deposits of ore embraced thereby and belonging to the same.

The right to follow a vein or deposit of ore on its down-

ward course, outside of the sidelines of the surface boundaries springs from, and is incidental to the ownership of the apex and the surface ground covering the same. Therefore when the net proceeds of a mine are derived from veins or deposits of ore the apexes of which and the surface ground of the mining claim are within the boundaries of a county, city, or town, we have no doubt that under the Revenue Act such proceeds are taxable therein, notwithstanding a portion, or even all the ore may have been extracted from the mine beneath the surface on the dip, outside of the boundaries of the county, city or town. The situs of such a mine, for the purposes of taxation, is not determined by the place at which the ores are brought to the surface, but by the place in which the apexes of the veins or deposits of ore, and the surface covering their apexes, are situated.

The burden of showing the invalidity of that portion of tax sought to be recovered, is upon the mining company. This the city's counsel contend has not been done.

The record fails to show that any part of the ores from which the net annual proceeds of the mine were derived, were extracted from any of its mining claims situated outside of the city limits.   From aught that appears from the facts, in regard to which there is no contention, all of the ores may have been extracted from veins or deposits of ore the apexes of which are wholly within mining claims belonging to the company, the surface boundary lines of which are wholly within the city limits.   It is not shown by the facts that any of the ores were extracted on the strike of any vein or ore deposit outside of the city limits, but from aught that appears the extraction of ores, outside of such limits, may have been done beneath the surface on the dip of a vein or deposit of ore having its apexes within the city limits.

The acts of public officers regularly performed within the scope of their authority are presumed to bé valid, until the contrary is shown.

In this case it was the duty of the assessor under Sec. 2688 R. S., to assess the taxable property in said city and deliver a copy of that part of his assessment roll containing the assessment of the property in the city to the city auditor. This was done by the assessor in due form, and upon the copy of the assessment roll so returned, the city authorities as provided in said section, regularly levied the tax sought to be recovered. There is nothing on the face of their official proceedings showing that the officers acted illegally or superceded their authority. The intendments of law are, that the judgments of courts of general jurisdiction are valid, and that he who attacks them must conclusively show their invalidity.

The appellant has failed to make such showing in this case; and, as the uncontradicted facts are before us and fail to show the invalidity of the tax, the judgment should not be reversed.

Counsel did not cite any case, in point, on the main question in the case, nor have we been able to find any. The case of Gilchrist's Appeal, 106 Pa. St. 600, cited by appellant's counsel, as in point, has no relevancy, as the facts in that case were different from those in this case. In that case the coal lands taxed were wholly outside of the boundaries of the city, and it does not appear that the owners of coal veins in the State of Pennsylvania are entitled to the lateral rights which the owners of mining claims in this state enjoy.

The facts in this case show that it is probable that in some instances a very small portion of the surface ground of the apex of a vein or ore deposit of a mining claim may be in one taxation district, and the balance of the same on

the course of the claim and vein or deposit, in a different one. And in some instances the ore may be brought to the surface on both sides of the dividing lines of taxation districts, and some of these lines may cross the veins or deposits of ore at a right angle to their strike, and others may, upon the apexes of such veins or deposits pass longitudinally over and through them. As the Revenue Act does not require the owners of mines, in such instances to make statements of the proceeds of their mines derived from ores taken from different taxing districts, perplexing complications are lible to occur. We express no opinion as to how taxes should be levied in such instances, as the facts in this case do not present any such instance, but call attention to the matter simply to emphasize the necessity of amending the Revenue Act so as to meet such contingencies.

It is ordered that the judgment of the lower court be affirmed, and that the appellant pay the costs.

We concur in the affirmance of the judgment, but dissent from the holding contained in the opinion with reference to the place where the net proceeds of the mine are taxable. We agree with the trial court that the net proceeds of the appellant's mine, both within and without the city of Eureka, are taxable at the place where the ores are taken to the surface through the main shaft of appellant's mine, which is within the limits of the respondent city. The net proceeds, being personal property, should be taxed in the city of Eureka, and as other personal property.

BARTCH, C. J., MINER. J.